```
                IN THE UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF ALABAMA
                           SOUTHERN DIVISION
```

JOANNA L. YEAGER,                 }
                                  }
     Plaintiff,                   }   CIVIL ACTION NO.
                                  }   03-AR-1845-S
v.                                }
                                  }
UNIVERSITY OF ALABAMA HEALTH      }
SERVICES FOUNDATION, P.C.,        }
                                  }
     Defendant.                   }

FILED 04 JUL 13 PM 12:51 U.S. DISTRICT COURT N.D. OF ALABAMA

ENTERED JUL 13 2004

## MEMORANDUM OPINION

Before the court is a motion for summary judgment filed by defendant, University of Alabama Health Services Foundation, P.C. ("Foundation"). Plaintiff, Joanna L. Yeager ("Yeager"), claims that Foundation violated the Fair Labor Standards Act ("FLSA") by failing to correctly pay her for all the hours she worked and dismissing her in retaliation for complaining of pay shortages. Foundation seeks summary judgment on all of Yeager's claims.

### Summary-Judgment Facts

Foundation first employed Yeager at its Homewood Health Clinic in 1996 as a front desk clerk. However, in March 1999, Yeager's health forced her to resign. A few months later, Foundation moved from Homewood to a location in Hoover.

Mary Ann Ortagus was the office manager in Hoover. Ortagus had supervised Yeager from May 1997 until Yeager resigned. In June 2000, Ortagus contacted Yeager about a job opening with

Foundation. Although Ortagus had disciplined Yeager when they worked at the Homewood location for being late, being absent, and other performance deficiencies, Foundation rehired Yeager.

On June 12, 2000, Yeager began as a temporary floater at Foundation's Hueytown, Moody, and Hoover clinics. As a floater, Yeager's primary responsibility was to file medical records. Then, in February 2001, Yeager became a full-time medical-records clerk at the Hoover clinic. Her expanded duties included pulling charts, filing dictation, and back-up receptionist duties. Initially, Foundation required her to attend work from 8:00 a.m. to 5:00 p.m.

Foundation uses a computerized timekeeping system, called "Kronos," to clock employee time. Employees "punch" in or out by dialing a specific telephone number. When Kronos answers, the employee punches in a personal identification number and a computerized voice indicates the time. Kronos automatically calculates the number of hours worked. This system is dependent upon the employee's remembering to punch in and out, except that a supervisor reviews the punches during each pay period for accuracy.

Yeager began using Kronos as early as February 2001, when she became a full-time employee. She only first noticed the alleged discrepancy between her hours and those reported by Kronos in January 2002, when she received her paycheck for the

pay period ending December 29, 2001. Thereafter, in addition to using Kronos, Yeager began logging her punches independently.

Yeager kept a log from January 7, 2002 through March 1, 2002, and one from March 2, 2002 through July 2, 2002. However, the log accounting for her hours since March 2, 2002 has gone missing. Yeager contends that Kronos shorted her approximately three to seven hours every other two-week pay period. For example, on January 7, 2002, Yeager recorded her start time as 7:30 a.m. and her end time as 6:20 p.m. However, Kronos indicates her start time as 7:56 a.m. and her end time as 6:19 p.m. -- a twenty-seven minute deficiency. Kronos reported that Yeager worked 45.25 total hours for this week. Consequently, this alleged deficiency would increase Yeager's overtime hours. She further alleges that this pattern continued through July 2, 2002.

On July 3, 2002, Yeager left a message for Ortagus that a migraine headache prevented her from coming to work. Yeager left the message after no one answered her three earlier calls. Yeager knew that leaving a message was against company policy, but other employees had left messages in the past without being fired and the lack of answer left her no other option.

Ortagus called Yeager later that afternoon. Ortagus had not received Yeager's message. However, she remembered denying a request by Yeager for vacation leave on July 3, 2002. Ortagus had denied Yeager's request because she had already granted leave for

that date to other employees. During the telephone call, Ortagus told Yeager that they needed to meet with Dr. Lejeune, the lead physician at the Hoover clinic, about the status of Yeager's job. Ortagus suggested July 5, 2002 as a probable meeting date, but did not suggest a specific time. The meeting time was "left up in the air."

Yeager called the clinic the morning of July 5, 2002, and left a message that she would not be available to meet on that date. She suggested meeting on Monday, July 8, 2002. Ortagus called back that morning. She told Yeager that the meeting had been at 8 o'clock and that Yeager was dismissed because she failed to attend the meeting. Ortagus sent a follow-up termination letter.

### Summary-Judgment Standard

Summary judgment is appropriate if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "material" if it is a legal element of the claim under applicable substantive law which might affect the outcome of the case. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). An issue is "genuine" if the record, taken as a whole, could lead a rational trier of

fact to find for the non-moving party. *Id.* On a motion for summary judgment, the court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the non-moving party, and determine whether that evidence could reasonably sustain a jury verdict. *Celotex,* 477 U.S. at 322-23; *Allen,* 121 F.3d at 646. The court cannot make credibility determinations, weigh the evidence or draw inferences from the evidence. *Anderson,* 477 U.S. at 255.

The moving party bears the burden of informing the court of the basis for its motion and demonstrating the "absence of evidence on an essential element of the non-moving party's case," *Celotex Corp.,* 477 U.S. at 323, 325. To withstand a motion for summary judgment, the non-moving party may not simply rest on the pleadings, but rather must "make a showing sufficient to establish the existence of [the] element[s] essential to that party's case, and on which that party will bear the burden of proof at trial...." *Id.* at 322. A mere "scintilla" of evidence in favor of the non-moving party, or evidence that is merely colorable or not significantly probative is not enough. *Anderson*, at 252; *see also Mayfield v. Patterson Pump Co.,* 101 F.3d 1371, 1376 (11th Cir. 1996) (conclusory allegations and conjecture cannot be the basis for denying summary judgment). If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law. *Id.* at 323.

**Analysis**

Yeager claims that Foundation retaliated against her in violation of 29 U.S.C. § 215. Establishing a *prima facie* retaliation case under the FLSA corresponds with the requirements of Title VII. Yeager must show that "(1) she engaged in activity protected under [FLSA]; (2) she subsequently suffered adverse action by the employer; and (3) a causal connection existed between the employee's activity and the adverse action." *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1342-43 (11th Cir. 2000). Once Yeager establishes a *prima facie* case, the burden of proof shifts to Foundation to articulate a legitimate, non-retaliatory reason for the adverse employment action. *Id*. If Foundation meets its burden, the burden returns to Yeager to then prove that Foundation's stated reason is a pretext. *Id.*

Foundation challenges Yeager's *prima facie* case and her pretext argument. Foundation dismissed Yeager, in part, because she failed to attend a July 5, 2002 meeting with Ortagus and Dr. Lejeune. Her history of attendance problems and her decision to call-in sick on July 3, 2002 -- after Ortagus rejected her request for vacation leave -- are legitimate, nondiscriminatory reasons for dismissing Yeager. Yeager contends that the July 5, 2002 meeting time was not sufficiently clear and, therefore, the meeting was a pretext. She also alleges a comparator, Carlee Wiggins. Neither argument is satisfies Yeager's burden.

Yeager's argument that the July 5, 2002 meeting time was "left 'up in the air,'" is inconsequential. An employer can fire an employee for any reason or no reason, provided it does not fire the employee for a discriminatory or retaliatory reason. *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir. 1984). Ortagus believed that Yeager was to arrive at 8 o'clock in the morning. Whether Ortagus sufficiently communicated the time for the meeting to Yeager or a mix-up occurred, Yeager admittedly did not appear. Yeager left a message for Ortagus that they could meet on Monday, July 8, 2002, instead. Yeager cannot establish pretext on this basis.

Alternatively, Yeager argues that a comparator, Carlee Wiggins, who never engaged in a protected activity was not dismissed. A comparator must be similarly situated in all relevant respects. "The most important factors in the disciplinary context ... are the nature of the offenses committed and the nature of the punishments imposed." *Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001) (citations and quotations omitted). Yeager has presented no evidence that Wiggins called-in sick on a day she had previously been denied vacation leave. Nor has Yeager shown that Wiggins failed to attend a disciplinary meeting. These offenses, in addition to excessive absenteeism, formed a rational basis for Ortagus' decision. Wiggins did not commit those offenses and,

therefore, is not a comparator. Foundation is due summary judgment on Yeager's retaliation claim. No fair-minded factfinder could connect Yeager's dismissal with a complaint over wages by finding the employer's legitimate, non-retaliatory reason pretextual.

Under the FLSA, employees who work more than forty hours in a workweek must be paid not less than one and one-half times the regular rate of pay for their hours worked in excess of forty. 29 U.S.C. § 207(a)(1). While Foundation correctly argues that an employer is responsible only for hours it had knowledge of, the employer still must exercise reasonable diligence to acquire that knowledge. *Reich v. Department of Conserv. & Natural Res.*, 28 F.3d 1076, 1082 (11th Cir. 1994). Foundation argues that it paid Yeager for all reported hours and, therefore, that it is entitled to summary judgment.

Relying on Ninth Circuit caselaw, Foundation argues that an employer is not liable when an employee fails to accurately report hours worked. *See Forrester v. Roth & I.G.A. Foodliner, Inc.*, 646 F.2d 413 (9th Cir. 1981). Specifically, Foundation charges that it paid Yeager for all time reported to Kronos. It is undisputed that Yeager complained to Ortagus that Kronos was incorrectly recording her time. However, an employer "does not rid [it]self" of the duty to inquire as to its employees' hours by simply shifting its burden to its employees. *Reich*, 28 F.3d at

1082. Foundation's argument really centers on its assertion that it paid Yeager "for every time she clocked in or out." (Doc. #15 at 15). This argument begs the question, namely, is Kronos infallible.

Yeager argues that Kronos incorrectly recorded her time. She complained to Ortagus. Foundation argues that the discrepancy between the times reflected in Kronos and those recorded in Yeager's log proves that "Plaintiff's log ... is not precise." (Doc. #15 at 18). The genuine issue of material fact evidence by the discrepancy -- whether Kronos or Yeager properly recorded Yeager's time -- precludes summary judgment on this issue.

### Conclusion

The court will enter an appropriate order.

DONE this  13th  day of July, 2004.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE